THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARTÍN MELÉNDEZ SANTIAGO, Defendant and Appellant.

Nos. CR-65-492    Decided November 2, 1966.
    CR-65-493
    CR-65-494.

*Elizabeth A. de Watlington* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

PER CURIAM: The prosecuting attorney filed two informations against appellant for the crimes of murder committed on his wife, Juana Rosado Rojas, and the latter's sister, Carmen María Rosado Rojas. He was also accused of a violation of § 4 of the Weapons Law.

The evidence for the prosecution presented at the trial tended to show that on December 31, 1961, defendant, who had been separated from his wife, Juana Rosado Rojas, for four months, went to the latter's house situated in ward Hato Tejas in Bayamón. Juana was there together with her sister Carmen María Rosado Rojas, and several of their children. Defendant asked to see his youngest daughter and his wife Juana answered that he could only see her from the door. Defendant entered and with a knife shaped like a dagger inflicted several wounds on Carmen María Rosado Rojas. The wife, Juana, fled from the house and returned with a piece of wood with which she hit defendant on his head. Defendant also inflicted several wounds on his wife Juana. Then he abandoned the house, wiped the blood from his knife and fled through a plantain plantation. The two sisters, Juana and Carmen María Rosado Rojas, died as a result of several incised, lacerated and puncture wounds inflicted on them by defendant.

On the same day of the crime defendant offered a sworn statement before the prosecuting attorney which statement the Solicitor General properly summarizes in the following terms:

"He was married to the victim, Juana Rosado, but had been separated from her for four months. She lived in Hato Tejas with Benito Mercado; he lived in Cataño. On December 31, 1961 about 12:30 p.m. he went to Hato Tejas in Bayamón to bring some things to his children. He had learned that his

sister-in-law, the victim Carmen María Rosado, had gone to visit her sister Juana and he thought that once and for all he could settle the problem, that is, he could kill both of them. He had conceived the idea of killing them a month ago: Carmen, because she had penetrated a candle into his four-year-old daughter three months before for the purpose of accusing him of rape; Juana, because she did not let him see his children. When he left his house in Cataño he was carrying with him a double blade bayonet-like knife about 10" to 12" long. He was carrying it in a paper bag. First he wounded Carmen, who, after being wounded, rushed over to him and then ran away. Juana approached him and hit him on his head with a piece of wood. He also stabbed her. Defendant fled and in his flight he lost the knife. He surrendered voluntarily." (Solicitor General's Report, p. 2.)

In addition to the written confession some statements made by defendant to the marshal of the Superior Court, Bayamón Part, Juan Ramón Rivera Ayala, were introduced in evidence. Let us see the record:

"Prosecuting Attorney:

Q. What is your name?

A. Juan Ramón Rivera Ayala.

Q. Where do you live?

A. I live in Pájaros Street in ward Hato Tejas, Bayamón.

Q. Will you please tell me whether you know Martín Meléndez Santiago?

A. Yes, sir.

Q. On what ocassion did you meet him?

A. On December 31, 1961, about 3:45 p.m. I had opportunity to meet him at the farm where my house is situated.

Q. Where is the farm where your house is situated?

A. Ward Hato Tejas in Bayamón.

Q. Did you have the opportunity to talk to him?

A. I did talk to him.

Q. Tell the ladies and gentlemen of the jury what he told you or what you asked him.

A. That day, as I said before, about 3:45 or 4:00 p.m. this man was being taken by the police of Bayamón in the police-patrol to my father's farm, which is situated in Ward Hato

Tejas. When I saw the police-patrol and the patrol wagon I immediately went to find out what was happening. Then they let out the defendant from the patrol wagon in front of my father's dairy at the same farm and I told him that I had learned what had happened. I told him: listen, I know you have committed two serious crimes, which entail imprisonment in the penitentiary. You will get two life-imprisonment sentences. He told me he did not mind whether he got two or twenty life-imprisonment sentences because he had killed two women, and that if they returned to life he would kill them again.

Q. How did he look?

A. He looked calm." (Tr. Ev. pp. 156–158.)

The only testimony for the defense was that of defendant himself. He said that on the day the facts occurred he went to his wife's house to see his youngest daughter; that he had been separated from his wife for four months and that the latter had filed an action for divorce to which he opposed; that during that time she had not permitted him to see his children. He was received by his sister-in-law, Carmen María Rosado, who told him that if he did not leave she "would club him"; that defendant insisted on seeing his daughter and Carmen Rosado rushed toward him; while he was struggling with her his wife Juana entered and hit him on the head with a club inflicting on him a wound. Upon questioning by the prosecuting attorney he testified that after Juana Rosado hit him he noticed a knife lying on the table, he took it and stabbed his assailants. He also said that he did not remember having made the statements which appear in the sworn statement offered before the prosecuting attorney. He also said that he does not know Juan Ramón Rivera Ayala and denied having made the statements the latter attributes to him.

The jury found him guilty of murder in the first degree in both cases and the court sentenced him to life imprisonment for each of the two counts. He was sentenced to serve one year in jail for the violation of the Weapons Law.

He appealed from the judgments and assigned the commission of four errors, the first of which he states as follows:

"First Error: The trial court erred in instructing the jury in the sense that defendant's admission made to witness Juan Ramón Rivera Ayala constituted a confession of the crimes charged."

We copy from the record the instructions given to the jury in relation to the admissions made by defendant to witness Rivera Ayala. Let us see:

"I forgot to tell you that by word of mouth of a witness called Juan Ramón Rivera Ayala, *another alleged confession of defendant was produced.* In order that you may also take into consideration those alleged statements which this witness has said he heard from defendant's lips, it is necessary that you be convinced that these statements were voluntarily made. That is, *that that confession which came through this witness* must also be voluntary and you should be convinced that it was voluntarily made in order that you may consider it. *And in order to determine whether that confession made by defendant* to witness Rivera Ayala was voluntary you must apply the same rules I have already explained to you. Of course, *in relation to that confession* there is the defendant's contradictory testimony, who has denied having said the phrase. You will have to decide, as a question of fact, as a finding of fact on the evidence presented. After examining the evidence you may decide, that defendant did not make the statements; or that if he made them he did so involuntarily; or that if he made them, it was voluntarily. If you think that he did not make them or that he made them involuntarily or if you have doubt as to whether he made them voluntarily, you are bound to reject them and not consider them. You are bound to consider the evidence only if you determine that he made them and made them voluntarily." (Part II, Instructions, pp. 16–17.) (Italics ours.)

In order to emphasize even more that the statements made by defendant to witness Rivera Ayala constituted a confession, the judge calls the written confession first confes-

sion and the oral one second confession. The magistrate told the jury:

"Ladies and Gentlemen of the jury, the written confession which was read to you and which is part of the evidence and which you will consider taking into account the rules I have explained to you, as it appears from the evidence, it was offered by defendant prior to the *alleged confession* which came to the consideration of the jury by word of mouth of witness Rivera. I must instruct you in that sense that if after analyzing the written confession which you heard and studying the circumstances that surrounded the offering of said confession, you should determine that there were circumstances contrary to the voluntariness of defendant which invalidate that written confession and as a result of said conviction you reject that written confession, then a conviction will arise to the effect that the same *circumstances which invalidate the written confession were present when the oral confession was produced.* If you believe that the oral confession was produced, and you believe it beyond reasonable doubt; then you will have to determine and be convinced beyond reasonable doubt whether those circumstances which invalidated as involuntary the first written confession were still present, were latent at the time *when the oral confession was produced* or whether, on the contrary, those circumstances were not present and had ceased to exist. In any event, if as a matter of fact you should determine that the first confession was involuntary, you must determine, as a question of fact, whether what induced you to reject the first confession *was present in the second confession.* If you understand that those circumstances were present *in the second confession,* you are bound to reject the second confession. Only when you are convinced that those circumstances ceased to exist you can take the evidence into consideration and it may be determined *that the oral confession is voluntary so as to take it into consideration as evidence against defendant."* (Part II, Instructions to the Jury, pp. 20–22.) (Italics ours.)

■■ Appellant is right in maintaining that his statements to witness Rivera Ayala constituted an admission of having killed the two women but that they did not constitute an acceptance of all the elements of the crime of murder in

the first degree. Admitting having killed a person does not imply that it is admitted that that death was caused with malice, deliberation, and aforethought. The Solicitor General so admits it and considering, as we now consider, that the error committed is of such prejudicial nature to defendant, he acquiesces to the reversal of the judgments, according to the doctrine in *People* v. *Crespo Guerrero,* 90 P.R.R. 212 (1964) where this Court said:

"To instruct the jury, in any case, that a testimony is a confession of the defendant, which in law means that he has admitted or recognized in an absolute manner the essential facts and elements of the crime with which he is charged, without it being a confession in law, constitutes a serious, reversible error of law. . . .

"Once the judge instructed the jury that Otero's testimony constituted appellant's confession, he transmitted to them the idea and his opinion that the latter accepted having committed the facts charged in the information, and this is prejudicial, particularly with reference to determining whether defendant committed murder in the first or second degree in view of the only other evidence as to the facts. It only remained for the jury to pass on the credibility of the witness and on the voluntariness of the so-called confession, which facts presented no controversy. Clemente Otero Ortiz' testimony should have been considered by the jury free from any remark, conclusion, description, or opinion on the part of the judge, and the jury, as the sole trier of the facts, should have weighed said testimony and derived therefrom the proper inferences and conclusions." (Solicitor General's Report, pp. 7 and 8.)

Since the error committed is reversible it is not necessary to consider the other assignments of error.

The judgments appealed from will be reversed and a new trial ordered.